Clinton KENNEDY, Dale Long, Kenneth H. Chandler, and Harold Sutphin, individually and on behalf of a class of similarly situated persons, Plaintiffs,

v.

COMMERCIAL CARRIERS, INC., a Michigan corporation, Defendant.

No. 90 C 00293.

United States District Court, N.D. Illinois, E.D.

May 25, 1990.

Robin Potter, Potter & Schaffner, Joel M. Hellman, Charles Pressman, Chicago, Ill., for plaintiffs.

John T. Schriver, McDermott Will & Emery, Julie Badel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

The issue before us is whether defendant properly removed this case. For the reason stated below, we hold that removal was improper.

## BACKGROUND

Plaintiffs Clinton Kennedy ("Kennedy"), Dale Long ("Long"), Kenneth Chandler ("Chandler"), and Harold Sutphin ("Sutphin") filed this purported class action, for breach of contract and an accounting, in the Circuit Court of Cook County, Illinois. In their state complaint, plaintiffs alleged as follows. Kennedy, Long, Chandler, and Sutphin are, respectively, citizens of Kentucky, Illinois, Tennessee, and Alabama. Defendant Commercial Carriers, Inc. ("Commercial"), a Michigan corporation with its principal place of business in Michigan, transports automobiles as a contract and common carrier. Each of the plaintiffs leased a transport vehicle (a tractor/truck) to Commercial, which used those trucks in its business. Each plaintiff had a separate written lease agreement with Commercial, and each lease required Commercial to pay as rent a percentage of Commercial's gross revenues from loads carried on the lessor's truck. Commercial agreed to pay sixty-five percent of its gross revenues (based upon billings to customers), less certain charges: final delivery charges where the vehicles did not make final delivery; drivers' wages and vacation pay at the union contract rates; and transportation costs attributable to the deliveries.

Plaintiffs allege that Commercial breached the leases by failing to pay them the proper rents. They claim that Commercial calculated the base rents on something less than its gross revenues. According to plaintiffs, Commercial incorrectly calculated the base rents by deducting "ancillary charges" from its gross billings prior to applying the sixty-five percent rental factor. Plaintiffs assert that Commercial should not have deducted the ancillary charges[1] prior to applying the rental factor. Plaintiffs fail, however, to allege any specific amount of damages in their complaint.

Plaintiffs also seek an accounting. They allege that Commercial's tariffs require it to bill its customers for various surcharges under certain circumstances. Plaintiffs have made numerous demands on Commercial, seeking to inspect Commercial's bills to its customers to determine whether Commercial included any and all surcharges to its customers in the base rents. Plaintiffs maintain that Commercial calculated the rents due based on the presumed billings at the standard vehicle rate, but failed to include the surcharges in the base rents.

On January 18, 1990, Commercial removed the entire case to this court, asserting both diversity and federal-question jurisdiction. In its removal petition, Commercial alleges that Kennedy and Long, along with nine other individuals purportedly included but not individually named in this

---

1. Ancillary charges ranged between approximately $2.40 and $13.00 per transported automobile during the period in which the leases where in effect.

case, had previously filed (and later voluntarily dismissed) an action, charging Commercial with improperly deducting ancillary charges from gross revenues in calculating rent on its equipment leases. In that previous action, the aggregate claim of the eleven plaintiffs was $945,000.00. Thus, Commercial maintains that this court has diversity jurisdiction because the named plaintiffs in this action are of diverse citizenship from it and the damages claimed by the eleven plaintiffs in the previous action, which exceed $50,000.00, are indicative of plaintiffs' losses in this action.

Commercial also maintains this court has federal-question jurisdiction. According to Commercial, during the time periods alleged in the complaint, plaintiffs were members of the Central and Southern Conference of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union"), and Commercial had a collective bargaining agreement with the Union which covered the plaintiffs. Commercial claims that the lease agreements between it and plaintiffs Chandler, Long, and Sutphin, respectively, incorporated provisions of the collective bargaining agreement. It maintains that the collective bargaining agreement defines the term "gross revenues," which is an essential compensation term of the lease agreements, and thus plaintiffs' claims are, in reality, claims for breach of the collective bargaining agreement. Commercial insists that it properly removed this case inasmuch as the Labor Management Relations Act ("LMRA") provides jurisdiction over suits alleging violations of collective bargaining agreements. 29 U.S.C. § 185(a).

Plaintiffs counter that Commercial's grounds for removal are improper. First, plaintiffs maintain that there is no federal-question jurisdiction. Plaintiffs argue that they do not allege a breach of any collective bargaining agreement. Rather, they claim that Commercial breached the lease agreements. Based on the face of their complaint, plaintiffs insist there is no federal-question jurisdiction. Further, plaintiffs assert that *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318

(1987), forecloses Commercial's reliance on federal-question jurisdiction. Second, plaintiffs argue that Commercial failed to make proper allegations of all the necessary elements of diversity jurisdiction. Specifically, plaintiffs maintain that Commercial failed to allege that each plaintiff has an individual claim in excess of the jurisdictional amount of $50,000.00.

Although plaintiffs contest Commercial's grounds for removal, they nonetheless maintain that there is a basis for this court to retain jurisdiction of the entire case based on diversity and the provisions of 28 U.S.C. § 1441(c). Plaintiffs assert that, although the claims of other named plaintiffs and some putative class members may be less than $50,000.00, plaintiff Kennedy's claim against Commercial is in excess of $50,000.00. Each plaintiff and each class member, they argue, has a separate contract with Commercial and has suffered a separate injury. Thus, plaintiffs contend, the claims of each plaintiff and each class member are separate and independent. Because there is diversity of citizenship between Kennedy and Commercial and the amount in controversy is in excess of $50,-000.00 and because Kennedy's claim is separate and independent from the other plaintiffs' claims, Kennedy's claim supports removal of the entire case pursuant to 28 U.S.C. § 1441(c), plaintiffs contend.

DISCUSSION

The removal statute provides in relevant part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending....

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising Under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the

parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction....

28 U.S.C. § 1441.

■■■■ We determine removability from the record as a whole. *Oglesby v. RCA Corp.*, 752 F.2d 272, 277–78 (7th Cir.1985). The burden of establishing the jurisdiction of this court is on the party seeking to remove and we should remand "if there is doubt as to the right of removal in the first instance." *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976). Thus, the burden is on Commercial to establish diversity of citizenship together with the requisite jurisdictional amount, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), or that the real nature of plaintiffs' claims is federal. *Jones*, 541 F.2d at 664.

### *Diversity Jurisdiction* [2]

■■ We agree with plaintiffs that Commercial's grounds for removal based on diversity jurisdiction are inadequate. In a class action,[3] the courts look only to the citizenship of the representative parties. *See Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969). Thus, complete diversity has to exist only between the named plaintiffs Chandler,

Dale, Long and Sutphin and the defendant Commercial. There is complete diversity among the parties as the named plaintiffs are citizens of Alabama, Illinois, Kentucky, and Tennessee while defendant is a citizen of Michigan.

■■ As to the requisite jurisdictional amount, it is axiomatic that "when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements." *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939). Thus, each plaintiff in a class action must satisfy the jurisdictional amount, and we must dismiss the claims of any plaintiff who does not. *Zahn v. International Paper Co.*, 414 U.S. 291, 301–02, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); *Snyder*, 394 U.S. 332, 89 S.Ct. 1053.

■■ In their state complaint, plaintiffs do not allege any specific amount of monetary damages. In their memorandum in support of this court's jurisdiction, however, plaintiffs allege that Kennedy's claim is in excess of $50,000.00, but they also allege that the claims of some named plaintiffs and some putative class members may be less than $50,000.00. Plaintiff's Memorandum in Support at 3.

In its response memorandum, Commercial alleges that "each plaintiff appears likely to be seeking damages in excess of $50,000." Defendant's Response at 8. Commercial also suggests that we average the $945,000.00 in total damages alleged in the previously filed suit (which was voluntarily dismissed), involving Kennedy and Long and nine other plaintiffs, and impute

---

**2.** Section 1332 of Title 28 provides in relevant part, "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 exclusive of interest and costs, and is between—(1) citizens of different states...."

**3.** Although we refer to this action as a class action, we have not as yet certified the class. We believe it is proper to determine whether we

possess subject matter jurisdiction before addressing the issue of class certification. *See Denberg v. United States R.R. Ret. Bd.*, 696 F.2d 1193, 1197 (7th Cir.1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984) (holding that, if the court did not have jurisdiction over class representative's action when it was filed, it did not have jurisdiction to certify the action as a class action under Rule 23).

the averaged amount to each plaintiff in this action. Commercial maintains that, absent further allegations in plaintiffs' present complaint as to the losses claimed by each plaintiff, it would be reasonable to assume equivalent losses of $85,909.09 per plaintiff ($945,000.00 in total damages divided by 11 plaintiffs). Plaintiffs, on the other hand, maintain that they "cannot concede or agree that [Chandler, Long, or Sutphin] has a claim in excess of $50,000." Plaintiffs' Memorandum in Support at 7.

■ As a rule, a general allegation that the amount in controversy exceeds the jurisdictional amount is sufficient, unless challenged. *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). If challenged, the party seeking to invoke the jurisdiction of the federal courts has the burden of proving that it does *not* appear to a legal certainty that the claim is for less than the jurisdictional amount. *McNutt*, 298 U.S. 178, 188–90, 56 S.Ct. 780, 784–85, 80 L.Ed. 1135 (1936); *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Commercial has failed to meet this burden. It neither "allege[d] with sufficient particularity the facts creating jurisdiction" nor "support[ed its] allegation" when challenged. *See St. Paul*, 303 U.S. at 287 n. 10, 58 S.Ct. at 589 n. 10 (citing *McNutt*, 298 U.S. at 182–89, 56 S.Ct. at 784–85).[4]

### Federal–Question Jurisdiction [5]

■ Commercial has also failed to demonstrate that the real nature of plaintiffs' claims is federal. The "well-pleaded complaint rule" provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429. Thus, a plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Id; Jones*, 541 F.2d at 664. However, if federal law has completely preempted an area of state

law, any claim purportedly based on that preempted state law is from its inception a claim arising under federal law. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. This complete preemption exception to the "well-pleaded complaint" rule applies primarily to cases raising claims preempted by § 301 of the LMRA. *Id.* Commercial argues that plaintiffs' claims fall within the ambit of § 301 preemption.

Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Section 301 provides federal courts with jurisdiction over controversies involving collective bargaining agreements, and also "authorizes [them] to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). Thus, section 301 preemption is necessary "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988).

■ Section 301 preemption extends beyond suits alleging violations of collective bargaining agreements and covers any state law claim where resolution of that claim is "substantially dependent upon analysis of the terms" of a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Thus, if appli-

---

4. The only plaintiff that satisfies the amount in controversy requirement is Kennedy. We will discuss the remand of his claim after we have addressed plaintiffs' separate and independent claim argument.

5. Section 1331 of Title 28 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

cation of state law requires the interpretation of a collective bargaining agreement, then § 301 preempts that law. *Lingle*, 486 U.S. at 413, 108 S.Ct. at 1885; *Douglas v. American Info. Tech. Corp.*, 877 F.2d 565, 569 (7th Cir.1989).

The dispute before us does not involve a breach of the collective bargaining agreement. Nor is resolution of plaintiffs' claims "inextricably intertwined with consideration of the terms of the labor contract." *Lueck*, 471 U.S. at 213, 105 S.Ct. at 1912. Rather, the dispute is over the parties' rights under the lease agreements, some of which incorporate certain portions of the collective bargaining agreement.

"Not every dispute ... tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Lueck*, 471 U.S. at 211, 105 S.Ct. at 1911. "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 396, 107 S.Ct. at 2431 (emphasis in original). This is the case here. The rights plaintiffs assert under the lease agreements are independent of any rights they may have under the collective bargaining agreement.

The collective bargaining agreement is at best tangential to the dispute before us. The collective bargaining agreement does not purport to establish the rental rates between Commercial and its equipment lessors; rather, it merely establishes a minimum for allowable rates. Commercial and its equipment lessors were free to negotiate any rate they desired so long as that rate equaled or exceeded the minimum rate set forth in the collective bargaining agreement.

Commercial maintains that determining the amount due to plaintiffs requires recourse to and an interpretation of the collective bargaining agreement. We disagree. According to Commercial, the col-

lective bargaining agreement defines "gross revenues" as "total tariff proceeds received by the carrier exclusive of ... ancillary charges which are justified." Defendant's Response at 3–4. Commercial interprets this language as allowing it to deduct ancillary charges from gross revenues in calculating the minimum allowable rental rates. Plaintiffs, however, do not contest Commercial's interpretation of the minimum allowable rates under the collective bargaining agreement. Plaintiffs argue that, under their lease agreements with Commercial, the rents due were higher than the minimum allowable rental rates in the collective bargaining agreement.

Commercial's argument that the incorporation clause in some of the leases [6] requires federal preemption of plaintiffs' claims is unavailing. Determining what provisions of the collective bargaining agreement the lease agreements incorporate and what effect to give those provisions requires interpretation of the lease agreements rather than the collective bargaining agreement.

It may be true that, in interpreting the lease agreements, a court may interpret some of the same provisions found in the collective bargaining agreement; but that is of no moment, because the lease agreements are not contracts between an employer and a labor organization and resolution of the dispute between Commercial and its lessors does not turn on the intentions of the parties to the collective bargaining agreement. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2431 (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791 (1987)). Neither situation is before us.

*Separate and Independent Claim*

■ We reject plaintiffs' argument that

---

**6.** The language of the clause is difficult to follow. It incorporates "those provisions ... applicable to the collective bargaining agreements as they pertain to lessor."

this court has jurisdiction under § 1441(c).[7] If we were to accept plaintiffs' interpretation of § 1441(c), we would be at odds with the Supreme Court's holding in *Zahn*, 414 U.S. 291, 94 S.Ct. 505. There, the Court concluded that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case...." *Id.* at 301, 94 S.Ct. at 512. "[I]t would be anomalous to preclude plaintiffs from participating in a class action suit commenced in federal court, under *Zahn*, while allowing federal court consideration of those same claims under section 1441(c) upon removal from state court." *Craig*, 645 F.Supp. at 166. *Accord Schwartz v. Merrill Lynch, Pierce, Fenner & Smith*, 424 F.Supp. 672, 673 (N.D.Cal.1976) (to allow removal of a class action pursuant to § 1441(c), where some but not all of the individual claims satisfy the diversity and amount in controversy requirements of 28 U.S.C. § 1332, "would be tantamount to defendant accomplishing through the back door what it could not accomplish through the front door under *Zahn*.").

Plaintiffs argue that, even though they could not have brought a class action in federal court originally, the action nevertheless could be removed pursuant to § 1441(c). Plaintiffs argue that the very purpose and effect of § 1441(c) is to expand the jurisdiction of the federal courts. They maintain that every case removed pursuant to § 1441(c) involves, by its nature, a claim that could not have been brought originally in federal court. To remand a case because it might include claims outside original federal jurisdiction is to render § 1441(c) meaningless, plaintiffs assert.

We do not find plaintiffs' argument persuasive. In *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the Supreme Court stated that an important congressional purpose in adopting the "separate and independent claim or cause of action" test for removability was to limit removal from state courts. *Id.* at 9–10, 71 S.Ct. at 538. There, the Court declared that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* at 14, 71 S.Ct. at 540. The court found that plaintiff's action against two foreign insurance companies and their resident agent to recover for a fire loss was a claim for a single wrong, even though plaintiff was uncertain which defendant was liable. *Id.* at 14–16, 71 S.Ct. at 540–41.

Although *American* involved one plaintiff and multiple defendants, rather than multiple plaintiffs and one defendant as in the instant case, the "single wrong" test is nonetheless applicable to our decision. *See Lewis v. Louisville & Nashville R.R. Co.*, 758 F.2d 219, 221 (7th Cir.1985) (claims are not "separate and independent" if they arise from "an interlocked series of transactions, i.e., they substantially derive from the same facts"); *New England Concrete Pipe Corp. v. D/C Systems of New England, Inc.*, 658 F.2d 867, 874 n. 12 (1st Cir.1981). We find that plaintiffs' claims arise out of a single alleged wrong, namely, Commercial's deduction of ancillary charges from its gross revenues prior to applying the sixty-five percent rental factor. Commercial's deduction of ancillary charges has nothing to do with the particular merits of any individual plaintiff's claim. *Craig*, 645 F.Supp. at 166.[8]

---

**7.** Courts and commentators disagree on whether § 1441(c) applies to a multiple plaintiff suit on the basis that each plaintiff has a "separate and independent claim." *See Craig v. Congress Sportswear, Inc.*, 645 F.Supp. 162, 165–66 (D.Me. 1986), for compilation of cases and arguments pro and con.

**8.** In *Craig*, plaintiffs commenced an action in state court on behalf of themselves and all other similarly situated employees of the defendant,

seeking severance pay under the state's severance pay act. The complaint alleged that defendant owed plaintiff class $179,000.00 in severance pay, but there were no allegations as to the amount owed to any individual class member, including the named plaintiffs.

The court held that the case was improvidently removed. *Id.* at 167. Neither the complaint nor the removal petition alleged the requisite amount in controversy. Further, the court found that, even if some members of the plain-

"Merely because each plaintiff seeks a separate judgment against defendant, the gravamen of the action is not changed. It is [defendant's] alleged common wrong to all plaintiffs which is the substance of the instant suit." *Schwartz*, 424 F.Supp. at 674.[9]

*Remand*

Even though Kennedy's claim exceeds $50,000.00, "remand of the entire action is necessary to avoid the 'untenable' result of simultaneous litigation in the state and federal courts, involving the same" defendant and the same challenges to the various lease agreements. *Craig*, 645 F.Supp. at 166. There would be duplication of effort and a consequent waste of resources, potential inconsistent results between the federal and state courts, and disputes over which court has jurisdiction of different class members, depending on whether the particular class member's claim exceeded the jurisdictional amount. As in *Craig*, we do not "read *Zahn* as mandating an involuntary division of an otherwise [seemingly] proper class action suit through remand of those plaintiffs' claims which do not exceed" the jurisdictional amount. *Id.*

■■■ An even more compelling reason for remanding the entire case involves § 1441(c). Kennedy's claim, if sued upon

alone, is removable; however, he joined his claim with others that are non-removable. If we were to retain Kennedy's claim, we would run afoul of § 1441(c) and established case law. A claim that is removable if sued upon alone cannot be removed if it is joined to a non-removable claim and the claims are not separate and independent. *American*, 341 U.S. at 16–19, 71 S.Ct. at 541–43 (vacating judgment because claim, which was removable if sued upon alone, was joined to a non-removable claim that was *not* separate and independent from the removable claim); *Hickey v. Duffy*, 827 F.2d 234, 236–37 (7th Cir.1987) (finding partial remand improvident where remanded state claim was not independent of retained federal claim); *Lewis*, 758 F.2d 219 (holding that claim was "separate and independent" and therefore removable). Thus, there is no jurisdictional basis for us to retain Kennedy's claim.

Even if we had reason to doubt the correctness of our decision, we should resolve any doubt in favor of remand. *Jones*, 541 F.2d at 644. We should endeavor "to spare the parties proceedings which might later be nullified should jurisdiction be found to be lacking." *Rosack v. Volvo of America Corp.*, 421 F.Supp. 933, 937 (N.D.Cal.1976).

---

tiff class had individual claims exceeding the jurisdictional amount, the case could not be removed under § 1441(c). *Id.* The court agreed with *Schwartz* that, in view of *Zahn* and *Finn*, the plaintiffs' individual claims were not "separate and independent." *Id.* at 166. The court found that the individual claims were based on defendant's policy of not complying with the state's severance act, which defendant asserted was unconstitutional. The court observed that defendant's refusal to pay had nothing to do with the particular merits of any individual employee's claim, and held that the "unitary policy underlying the denial of severance pay to all plaintiffs satisfies the 'single wrong' test of [*Finn*]." *Id.*

9. In *Schwartz*, plaintiff filed suit in state court on behalf of himself and all other similarly situated individuals, seeking recovery of forfeited pension benefits from a former employer on a theory that such benefits constituted wages and were not subject to forfeiture. In his state complaint, plaintiff specifically alleged that many of the plaintiffs had less than the jurisdictional amount in benefits forfeited. For this

reason, the federal court found that removal was improper under § 1441(a), as the action could not have been brought in that court originally. *Id.* at 673.

The court further held that removal was not available under § 1441(c) because plaintiffs' claims were not separate and independent. *Id.* at 674. The court stated that, under the logic of *Finn*, "removal is not available when multiple plaintiffs join their claims against a single defendant arising from a common wrong allegedly committed by that defendant." The court found that plaintiffs' claims arose from a common wrong, namely, defendant's policy of forfeiting its former employees' pension benefits. *Id.* Given the Supreme Court's endorsement of the "single wrong" test for determining when a claim is not "separate and independent" under § 1441(c), the *Zahn* requirement that all class members must meet the amount in controversy requirement, § 1441's perceived purpose of restricting the availability of removal and that no federal rights were present in the case before it, the court concluded that the case was improvidently removed. *Id.* We find this reasoning persuasive.

**414**

CONCLUSION

We find that we have no federal-question jurisdiction. Defendant failed to meet its burden as to the amounts in controversy, and Kennedy's claim is not separate and independent from those of the other plaintiffs such that removal is proper under § 1441(c). Pursuant to § 1447(c), we remand this case to state court.